UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOARD OF SELECTMEN OF THE TOWN OF GRAFTON and ROBERT S. BERGER, Grafton Building Inspector, <br><br> Plaintiffs, <br> v. <br><br> GRAFTON & UPTON RAILROAD COMPANY, <br><br> Defendant. | CIVIL ACTION <br> NO. 12-cv-40164-TSH |

## AMENDED MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS FOR LACK OF REMOVAL JURISDICTION
May 22, 2013

HILLMAN, District Judge.

## I.  INTRODUCTION

Plaintiffs, the Board of Selectmen of the Town of Grafton and Grafton Building Inspector, Robert S. Berger, (collectively, the "Town"), have sued the Grafton & Upton Railroad Company (the "G&U") seeking injunctive relief to halt the construction and development of a propane transloading facility which, if completed, will violate the Town's zoning by-laws (Docket Nos. 1-3, 38). Pending now before the Court is the Town's Motion to Dismiss for Lack of Removal Jurisdiction that the Court will consider as a motion to remand. (Docket No. 22). After hearing arguments during a five-day bench trial on both the jurisdictional questions and substantive merits of the case, the Court took the present action under advisement. For the following reasons, the Town's motion is **GRANTED** and the action is hereby remanded to Worcester Superior Court for further disposition.

## II.  BACKGROUND

### A.  The Parties

The G&U is a Class III "shortline" railroad that runs upon a 16.5-mile track through the towns of Grafton (at its northern terminus), Upton, Hopedale, and Milford (at its southern terminus). *Def.'s Proposed Findings of Fact* ("*Def.'s PFF*") ¶¶ 1-2 (Docket No. 50). It has operated continuously for the last 140 years. *Id.* The Town is a municipality incorporated in Worcester County, Massachusetts. *Pl.'s Proposed Findings of Fact* ("*Pl.'s PFF*") ¶ 1 (Docket No. 52).

### B.  The Facility

In 2010, the G&U began planning to construct a liquefied propane gas transloading facility located on its property at 50 Westboro Road in the Town. *Def.'s PFF* ¶ 5; *Pl.'s PFF* ¶ 4. Once operational, it is estimated that the facility would be able to handle approximately 2,000 propane rail cars per year. *Def.'s PFF* ¶ 36. By the end of 2011, the G&U performed "site work" on the property that included: clearing, grading and compacting land, and laying new rails to form a "spur" line that would branch off from the G&U's mainline. *Id.* ¶¶ 12, 15. In February 2012, the G&U purchased an abutting property located at 42 Westboro Road. *Id.* ¶¶ 12-13; *Pl.'s PFF* ¶ 5. The proposed site also included plans to install four pressurized tanks for storing propane prior to distribution. *Def.'s PFF* ¶ 16. The tanks are substantial; each weighs approximately 225,000 pounds, stands 15 feet tall, measures 120 feet in length and holds up to 80,000 gallons of liquefied propane. *Pl.'s PFF* ¶¶ 22-23; *Def.'s PFF* ¶ 19. Based on the G&U's site plans, part of the facility would extend onto the parcel located at 42 Westboro Road. *Pl.'s PFF* ¶ 5; *Def.'s PFF* ¶ 12.

### C.  The Town's Regulations

The construction of the proposed facility conflicts with the Town's existing zoning by-laws ("ZBLs") for several reasons. First, although the G&U's original property at 50 Westboro Road is zoned for "industrial" uses, the recently added property at 42 Westboro Road falls under zoning district "R20" for residential use as well as the Town's Water Supply Protection Overlay District. *Pl.'s PFF* ¶¶ 6-7; *Pl.'s Ex. A* (the Town's Zoning Map); *Pl.'s Ex. D* (the Town's ZBLs), ZBL § 3.2.3.1. Next, rail terminals, freight yards and warehouses are expressly prohibited within R20 districts. *Pl.'s PFF* ¶¶ 8-9; *Pl.'s Ex. D*, ZBL § 3.2.3.1. Further, the Town's ZBLs do not permit any use variances for industrial purposes and proscribe the transport, sale, storage and industrial use of petroleum-based products like propane on any properties zoned under R20. *Pl.'s PFF* ¶¶ 7, 10; *Pl.'s Ex. D*, ZBL § 7.4.C.9. Currently, the G&U has not filed for construction permits with the Town's Zoning Board of Appeals nor has it filed for a "land license" from the Commonwealth that is required prior to constructing a propane facility under Mass. Gen. Laws ch. 148, § 13.[1] *Pl.'s PFF* ¶¶ 11, 17.

### D. Proceedings

Although the amount and nature of information disclosed between the parties during the relevant timeline of events remains disputed, representatives from the Town and the G&U did meet on several occasions to discuss plan proposals. *Id.* ¶¶ 12-13, 16-18, 20, 38-40.  During a June 2011 meeting, employees from the G&U met with the Town's Fire Chief and other state officials to inform them of the G&U's preliminary plans to build a propane transloading facility. *Def.'s PFF* ¶¶ 121-22. At that meeting, Jacob Nunnemacher, a Fire Protection Engineer with the

---

[1]       Mass. Gen. Laws ch. 148, § 13 states that "[n]o building or other structure shall, . . . , be used for the keeping, storage, manufacture or sale of any of the articles named in section nine, unless the local licensing authority shall have granted a license to use the land on which such building or other structure is or is to be situated for the aforementioned uses." Some of the proscribed articles mentioned in Section 13 include "crude petroleum or any of its products . . . or inflammable fluids or compounds . . . ." Mass. Gen. Laws ch. 148, § 9. Furthermore, local municipalities are permitted under the General Laws to "make and enforce ordinances and by-laws, not inconsistent with said rules and regulations, relatives to the subject matter of this section." *Id.*

Massachusetts Department of Fire Services, informed the G&U's representatives that certain "land licenses" were required before constructing a propane facility. *Id.*; *Pl.'s PFF* ¶ 17.

Sometime in the spring of 2012, the G&U's President, Jon Delli Priscoli ("Delli Priscoli") toured a Town administrator around the G&U's property and informed him that the proposed facility would be used for propane transloading. *Def.'s PFF* ¶¶ 125-26. At that same meeting, Delli Priscoli also stated that the G&U would forgo the normal permitting processes because any proposed transloading facility on the G&U's property would be exempted by federal preemption. *Id.* ¶ 127. Thereafter, during a March 20, 2012 Board of Selectmen meeting, Delli Priscoli told the Town's board members that although the G&U had not yet determined what specific commodity it planned to transport, store and sell on its property, it would keep the Town appraised of any further developments to the plans. *Pl.'s PFF* ¶¶ 12-13. Later in the summer of 2012, representatives from the Town and G&U met on two separate occasions to discuss safety and security issues on the property. *Def.'s PFF* ¶¶ 129-30; *Pl.'s PFF* ¶¶ 20-21. The Town avers that it was not informed that the proposed facility would be for transloading liquefied propane gas until the fall of 2012. *Pl.'s PFF* ¶ 38; *Def.'s PFF* ¶¶ 139-40.

On December 11, 2012, Delli Priscoli informed the Town's Board of Selectmen that the four propane storage tanks would be delivered and installed between December 13 and December 20, 2012. *Pl.'s PFF* ¶¶ 45-46. Because delivery of the tanks was imminent, the Town immediately filed suit in Worcester Superior Court seeking, inter alia, a preliminary injunction to enforce their cease and desist order halting the delivery of storage tanks (Docket No. 1-3). The G&U maintains that although the Complaint establishes only state law claims, removal under 28 U.S.C. § 1441(a) is appropriate because the Town's causes of action are preempted under 49

4

U.S.C. § 10501(b) of the Interstate Commerce Commission Termination Act (the "ICCTA") and thus, this Court is the proper forum under 28 U.S.C. § 1331 (Docket No. 1).

### III.   LEGAL STANDARDS

The instant action represents a unique opportunity to clarify the jurisdictional bounds and preemptive effect under the ICCTA in this District. Thus, the issue presented for the disposition of this motion is whether or not the underlying state causes of action are, in reality, federal claims that can only be vindicated under this Court's jurisdiction. In order to address this issue, this Court sets forth the pertinent legal standards in the following manner:

#### A.   The ICCTA

Congress passed the ICCTA in 1995 in order to fundamentally deregulate the railroad industry. *See, e.g.*, *Cedarapids, Inc. v. Chicago, Cent. & Pac. R.R. Co.*, 265 F. Supp. 2d 1005, 1011 (N.D. Iowa 2003) ("Congress sought to federalize many aspects of railway regulation that previously had been reserved for the states in an effort to ensure the success of Congress' attempt to deregulate and thereby revitalized the industry."). Regulating railroads has traditionally been "among the most pervasive and comprehensive of federal regulatory schemes." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981). This comprehensive set of statutes under 49 U.S.C. § 10101 *et seq.* were designed to supersede the Interstate Commerce Act ("ICA"). *CSX Transp. Co. v. Novolog Bucks Cnty.*, 502 F.3d 247, 251 n.1 (3d Cir. 2007).

To promote the goal of "federalizing" railroad regulation, Congress established the Surface Transportation Board (the "STB"), an administrative agency charged with "administer[ing] the ICCTA." *See* 49 U.S.C. § 701(a) ("There is hereby established within the Department of Transportation the Surface Transportation Board."); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008); *Pejepscot Indus. Park, Inc. v. Me. Cent.*

*R.R. Co.*, 215 F.3d 195, 204 (1st Cir. 2000). The STB derives its "exclusive" jurisdiction from Section 10501 that states in relevant part:

>  The jurisdiction of the [Surface Transportation] Board over–

>>  (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

>>  (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

>  is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). Things that qualify as "transportation" under the ICCTA include: Locomotive[s], car[s], . . . warehouse[s], . . . yard[s], property, facilit[ies], . . . or equipment of any kind related to the movement of passengers or property, or both, by rail." *Id.* § 10102(9)(A). An entity is considered a "rail carrier" under the ICCTA if it "provid[es] common carrier railroad transportation for compensation . . . ." *Id.* § 10102(5). Transloading facilities are considered part of a "railroad" as well as any "intermodal equipment used by or in connection with a railroad . . . and . . . terminal[s], terminal facilit[ies], and freight depot[s], [and] yard[s] . . . ." *Id.* §§ 10102(6)(A)-(C).

### B.  *Subject-Matter Jurisdiction and Removal*

Because courts established under Article III are courts of "limited" subject-matter jurisdiction, they may only preside over actions where original jurisdiction is conferred by statute. *See* U.S. Const. art. III, §§ 1-2. From an individual party's perspective, subject-matter jurisdiction "can be conceptualized as conferring a personal right on the part[y] to have [this]

action . . . adjudicated in [this] judicial forum." *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994). Moreover, "as courts of limited jurisdiction, [district courts] may not presume the existence of subject matter jurisdiction, but, rather, must appraise their own authority to hear and determine particular cases." *Calderon-Serra v. Wilmington Trust Co.*, No. 11-2449, 2013 WL 1715518, at *1 (1st Cir. Apr. 22, 2013) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 712 (1st Cir. 1998)); *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95, 101 (1st Cir. 2001) ("Subject matter jurisdiction is not a 'nicety of legal metaphysics' but rests instead on the 'central principle of a free society that courts have *finite* bounds of authority'.") (emphasis added) (quoting *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 77, 108 S. Ct. 2268 (1988)).

Plaintiffs, as "master[s] to decide what law [they] will rely upon," may strategically try to remedy their claims in state court, however, defendants may counter by seeking to remove such actions to federal court. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S. Ct. 410 (1913). "[P]rovided that the defendant can show some basis for federal jurisdiction," *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 4 (1st Cir. 1999), they may remove "any civil action brought in a State court of which the district courts of the United States have *original jurisdiction*." 28 U.S.C. § 1441(a) (emphasis added). A district court's original jurisdiction over a particular subject matter is traditionally garnered under either *diversity jurisdiction* or *federal question jurisdiction*. District courts maintain diversity jurisdiction when the parties are completely "diverse," i.e., neither plaintiff nor defendant are citizens of the same jurisdiction and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Federal question jurisdiction, on the other hand, allows a district court to decide an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Removal jurisdiction under Section

1441 is strictly construed and "[i]f at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case [must] be remanded." 28 U.S.C. § 1447(c); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S. Ct. 868 (1941).

## C.  The "Well-Pleaded Complaint" Rule

Where, as here, removal is based on federal question jurisdiction, courts make their jurisdictional determination "under the well-pleaded complaint rule." *Templeton Bd. Of Sewer Comm'rs v. Am. Tissue Mills of MA, Inc.*, 352 F.3d 33, 36-37 (1st Cir. 2003). This rule requires district courts to delve into the "four-corners" of the complaint and decipher the precise cause of action that the plaintiff advances. *See Rossello-Gonzalez*, 398 F.3d at 10 ("[T]he court is to look only to [a] *plaintiff's complaint* to find the answer.") (quoting *Hernandez-Agosto v. Romero-Barcelo*, 748 F.2d 1, 2 (1st Cir. 1984)) (emphasis in original). Moreover, "[t]he well-pleaded complaint rule . . . focuses on claims, not theories . . . and just because an element that is essential to a particular theory *might* be governed by federal law does not mean that the . . . claim 'arises under' [federal law]." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 811, 108 S. Ct. 2166 (1988) (emphasis added). The Supreme Court has also noted that:

> whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute . . .  must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 207, 124 S. Ct. 2488 (2004) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76, 34 S. Ct. 724 (1914)).  "[T]he Party invoking federal jurisdiction bears the burden of demonstrating that the court has subject-matter over the case." *Milford-Bennington R.R. Co. v. Pan Am Rys., Inc.*, 695 F.3d 175, 178 (1st Cir. 2012). If the complaint contains only state law claims, then the well-pleaded complaint rule is satisfied. Nevertheless, an

exception to this rule exists if the federal statute used as the basis for removal "wholly displaces the state-law cause of action" under what is known as the doctrine of complete preemption. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058 (2003).

### D.  Ordinary Preemption

Ordinary preemption constitutes an affirmative defense and is based on the concept of supremacy of federal law over state and local regulations. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land . . . ."). As a defense, it pertains to the analytical approach a court takes when determining the *choice of law* that applies to a specific matter. *See Piekarski v. Home Owners Sav. Bank, F.S.B.*, 956 F.2d 1484, 1489 (8th Cir. 1992). It is well settled that the mere specter of an affirmative defense under preemption or even the fact that a defendant might prevail on such a claim are inadequate grounds for removal. *See Beneficial Nat'l Bank*, 539 U.S. at 6; *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425 (1987); *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 12, 103 S. Ct. 2841 (1983).

Traditionally, courts have held that preemption defenses fall into either of two basic "flavors": (1) express preemption; or (2) implied preemption. *See South Dakota ex rel. S.D. R.R. Authority v. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919, 927 (D.S.D. 2003) (enumerating "four flavors"). "Express preemption occurs only when a federal statute explicitly confirms Congress's intention to preempt state law and defines the extent of that preclusion." *Grant's Dairy—Me., LLC v. Comm'r of Me. Dept. of Agric., Food & Rural Res.*, 232 F.3d 8, 15 (1st Cir. 2000) (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270 (1990)). While Congressional intent is the "ultimate touchstone" of preemptive analysis, "[i]f a federal

law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76, 129 S. Ct. 538 (2008) (interpreting the preemptive effect of the Federal Cigarette Labeling and Advertising Act on a Maine statute regulating unfair trade practices).

Implied preemption, on the contrary, "is more elusive," *Mass. Ass'n of Health Maintenance Orgs. v. Ruthardt*, 194 F.3d 176, 179 (1st Cir. 1999), and conceptually, "has a certain protean quality, which renders pigeonholing difficult." *French v. Pan Am Express, Inc.*, 869 F.3d 1, 2 (1st Cir. 1989). Typically, when deciding whether implied preemption exists, courts must determine whether the application of the state and federal law at issue creates a "conflict," or whether the disputed subject matter, or "field," is one that is completely subsumed by a federal scheme. *See, e.g.*, *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 472-73 (1st Cir. 2009) ("In [conflict preemption], state law 'is pre-empted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'") (quoting *Good v. Altria Group, Inc.*, 501 F.3d 29, 47 (1st Cir. 2007)); *Antilles Cement Corp. v. Foruno*, 670 F.3d 310, 323 (1st Cir. 2012) ("Congress[] intend[s] to preempt an entire field of law when it enacts a scheme of regulation 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'") (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146 (1947)).

### E.  Complete Preemption

As previously mentioned in Section C of this Part, an exception to the well-pleaded complaint rule is the doctrine of complete preemption. *See Beneficial Nat'l Bank*, 539 U.S. at 8 (noting another exception exists where a statute expressly provides for removal of state court actions). Simply stated, complete preemption "permits federal question-based removal of state-law claims filed in state court." Trevor W. Morrison, *Complete Preemption and the Separation of Powers*, 155 U. Pa. L. Rev. 186, 187 (2007). This rule, on its face, is seemingly straightforward; however, the manner in which courts have interpreted it is anything but.

Complete preemption is, in many ways, a "misnomer." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011); *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008) ("Despite academic concerns, the doctrine is well established, although perhaps poorly named.").[2] The reason for the varied interpretations of this doctrine can likely be attributed to courts and defendants conflating it with principles of ordinary "defensive" preemption. *See, e.g.*, *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005) ("While these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest."); *Rawls v. Union Pac. R.R.*, No. 1:09-CV-01037, 2012 WL 2803764, at *4 (W.D. Ark. July 10, 2012) (listing cases noting this confusion amongst the courts in the Eight Circuit); *In re Enron Corp. Sec., Derivatives & ERISA Litig.*, 284 F. Supp. 2d 511, 626 (S.D. Tex. 2003) (underscoring a mistaken view of complete preemption by noting that it "is sometimes called 'implied preemption' or

---

[2]       A more feasible definition of complete preemption might be, borrowing in part from a theory of judicial review recently argued before the Second Circuit, "field preemption-plus," where Congressional implication of preemption is so decisive that it not only "foreclose[s] any state regulation" over a particular subject matter but also forecloses jurisdiction before state courts. *See Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012) (noting that during a Fifth Amendment equal protection challenge to the Defense of Marriage Act, the court was presented with an argument that rational basis review should be more "exacting," and thus, considered under a "rational basis *plus* or intermediate scrutiny minus" standard) (emphasis added); *see also Arizona v. United States*, 132 S. Ct. 2492, 2502 (2012) (discussing "field preemption" within the immigration context). *Cf. Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 n.5 (2d Cir. 2005) ("We agree that the term '*jurisdictional preemption*' is more accurate, but follow convention (and the Supreme Court) in continuing to use the label 'complete preemption.'") (emphasis added). Notwithstanding this Court's articulation, it seems likely that in the event that Congress desires to legislatively preempt a field of law and provide only a federal forum for adjudication, that it would expressly do so and thus bypass the complete preemption doctrine entirely. *See infra* Part IV-A.

'field preemption'"). Thus, unlike ordinary preemption, which affects the substantive *choice of law* applied to a matter, complete preemption in removal scenarios relates to *choice of forum*. *See, e.g.*, *Am. Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339 (8th Cir. 2013) (noting that "preemption may also be categorized as complete or ordinary—and, therefore, jurisdictional or waivable—depending upon the circumstances of a particular case"); *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 534 (1st Cir. 2007) ("[C]omplete preemption determines whether a federal court has *jurisdiction* over a claim, not whether a state enforcement action would be precluded *on the merits* by federal preemption.") (emphasis added); *Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d at 927 ("The defense of preemption can prevent a claim from proceeding, but in contrast to complete preemption it does not convert a state claim into a federal claim.").

How courts apply the doctrine has also varied. *See Shupp v. Reading Blue Mountain & N. R.R. Co.*, 850 F. Supp. 2d 490, 498-99 (M.D. Pa. 2012) (comparing and contrasting decisions under complete preemption in the First, Third and Fifth Circuits). Recently, the First Circuit analyzed the doctrine and determined that "in certain matters Congress so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim." *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008) (emphasis in original). If the focus of a court's analysis is on the *remedy* sought rather than the underlying cause of action, then practically any matter could be removed under complete preemption. *See BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 831 (1st Cir. 1997) ("The doctrine empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly.").

## IV.   ANALYSIS

In support of its Opposition to Plaintiff's Motion to Dismiss, the G&U presents four arguments that removal was appropriate in this case: 1) the Complaint asserts a federal question under 28 U.S.C. § 1331; 2) the ICCTA completely preempts all state and local regulations at issue; 3) removal was appropriate under "federal ingredient" jurisdiction; and 4) the Town's Motion to Remand is merely a delay tactic (Docket No. 32). Although the G&U's arguments are unavailing, the Court, in turn, addresses each by order of relevance.

### A.   The ICCTA Does Not Completely Preempt the Town's Claims

In support of complete preemption, the G&U presents two lines of argument, that when distilled into their component parts, cannibalize themselves and remain untenable. Throughout the proceedings before this Court, the G&U spared no moment to reiterate the powerful preemptive scope of the ICCTA as a defense.[3] While there is no question that the G&U has a strong case in this manner,[4] in the end, the G&U's assertions fall short because it has failed to

---

[3]     Specifically, during trial and through extensive briefs, the G&U furthered this line of argument by presenting ample evidence demonstrating that any permitting obligations prior to constructing its transloading facility must be preempted because the G&U has satisfied the five-step *ordinary* preemption analysis outlined in *Tex. Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525 (5th Cir. 2012) ("*Midlothian*"). Under the *Midlothian* analysis, the five factors enumerated by the Fifth Circuit were: "(1) 'whether the rail carrier holds out transloading' as part of its business, (2) the 'degree of control retained by the [rail] carrier,' (3) property rights and maintenance obligations, (4) contractual liability, and (5) financing." *Id.* at 531 (citing *City of Alexandria, VA– Petition for Declaratory Order*, STB Finance Docket No. 35157, 2009 WL 381800, at *2 (S.T.B. Feb. 17, 2009) and *Town of Babylon and Pinelawn Cemetery—Petition for Declaratory Order*, STB Finance Docket No. 35057, 2008 WL 275697, at *3-4 (S.T.B. Feb. 1, 2008)).

[4]     In 2001, the STB heard a case that was factually similar to the case at bar in *Friends of the Aquifer, City of Hauser, Id., Hauser Lake Water Dist., Cheryl L. Rodgers, Clay Larkin, Kootenai Envtl. Alliance, R.R. & Clearcuts Campaign*, STB Finance Docket No. 33966, 2001 WL 928949 (S.T.B. Aug. 10, 2001). There, the STB held that the Burlington Northern and Santa Fe Railway Company was not required to follow regulations pursuant to local permitting law and the National Environmental Policy Act ("NEPA") for the construction of a proposed refueling terminal which included "two 250,000-gallon storage tanks for holding diesel fuel, as well as a 20,000-gallon storage tank for bulk lube oil, a 27,000-gallon ground waste oil storage tank, and a 210,000-gallon industrial wastewater storage tank . . . . [all] situated over a portion of the Aquifer." *Id.* at *1. *But see Town of Milford, MA— Petition for Declaratory Order*, STB Finance Docket No. 34444, 2004 WL 1802301 (S.T.B. Aug. 12, 2004) (holding that the G&U's proposed construction of a scrap metal transloading facility was not considered "transportation by rail carrier" and thus federal preemption of Milford's ZBLs did not apply).

Nonetheless, both the courts and the STB have taken different views as to the preemptive scope of the ICCTA on local permitting obligations. *Compare Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 643 (2d

satisfy its baseline burden of proving that jurisdiction is appropriate in this case by keeping complete preemption and ordinary preemption "*separate and distinct*" concepts. *Warner v. Ford Motor Co.*, 46 F.3d 531, 535 (6th Cir. 1995) (emphasis added) (overruling a district court that mistakenly asserted jurisdiction under complete preemption of an ERISA claim).

The difficulty in parsing out these individual doctrines is evidenced in the G&U's Opposition to Plaintiff's Motion to Dismiss (Docket No. 32).[5] The rule for applying complete preemption in the First Circuit, which the G&U correctly cites, "is whether federal law provides an *exclusive substitute federal cause of action* that a federal court (or possibly a federal agency) can employ for the kind of claim or wrong at issue." *Fayard*, 533 F.3d at 47 (emphasis added). This view, that a "lack of [a] federal cause of action is fatal to a complete preemption argument," is not germane to the First Circuit. *See, e.g.*, *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 252 (8th Cir. 2012) (listing circuit court cases in agreement); *King v. Marriot Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003) ("Where no discernible federal cause of action exists on a plaintiff's claim, there is no complete preemption."); *but cf. PCI Trans., Inc. v. Fort Worth & W. R.R. Co.*,

---

Cir. 2005) (holding that the ICCTA preempted Vermont from applying pre-construction permits under an environmental land use law); *Soo Line R.R. Co. v. City of Minneapolis*, 38 F. Supp. 2d 1096, 1101 (D. Minn. 1998) (holding that the city's demolition permitting process was preempted under the ICCTA); *Norfolk S. Ry. Co. v. City of Austell*, No. 97-cv-1018-RLV, 1997 WL 1113647, at *6 (N.D. Ga. Aug. 18, 1997) (holding that the city's attempted application of zoning ordinances to a railroad's intermodal facility were preempted under Section 10501(b)(2)), *and Joint Petition for and Declaratory Order-Bos. & Me. Corp. and Town of Ayer, MA*, STB Finance Docket No. 33971, 2001 WL 458685, at *5 (S.T.B. Apr. 30, 2001) ("[S]tate and local permitting or preclearance requirements (including environmental requirements) are preempted because by their nature they unduly interfere with interstate commerce by giving the local body the ability to deny the carrier the right to construct facilities or conduct operations."), *with Fla. E. Coast Ry. Co. v. City of West Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001) (holding that the city's application of local zoning and occupational licenses did not constitute "regulation of rail transportation" under Section 10501(b) and was not preempted); *Village of Ridgefield Park v. N.Y. Susquehanna & W. Ry. Corp.*, 163 N.J. 446, 460, 750 A.2d 57 (2000) (holding that although the village could not enforce certain permits on the railroad, it could enforce local fire, health, plumbing and safety regulations); *Borough of Riverdale Petition for Declaratory Order, The N.Y. Susquehanna & W. Ry. Corp.*, STB Finance Docket No. 33466, 1999 WL 715272, at *4 (S.T.B. Sept. 9, 1999) ("[S]tate or local regulation is permissible where it does not interfere with interstate rail operations, and that localities retain certain police powers to protect public health and safety.").

[5]       For example, the G&U actually uses the doctrine to define itself by stating that "[u]nder complete preemption, removal of a state claim is proper 'where federal law completely preempts a plaintiff's state-law claim.'" *Alshafri v. Am. Airlines, Inc.*, 321 F. Supp. 2d 150, 155 (D. Mass. 2004).

418 F.3d 535, 545 (5th Cir. 2005) (holding that a cargo shipper's state suit against a railroad seeking injunctive relief was completely preempted and removable because the ICCTA provided an appropriate framework for remedies available to the shipper).

Although this substitute cause of action "need not be co-extensive with the ousted state claim," i.e., perfectly identical, it must nevertheless be sufficient in scope to transform that state claim into a federal cause of action. *Fayard*, 533 F.3d at 46. Notwithstanding the accepted rule, which the G&U recognizes, the G&U's arguments focus exclusively on the *remedies* that may be provided to the Town under the ICCTA. The G&U's basic arguments are: 1) the breadth of the preemptive sweep under the ICCTA is so strong that adjudication of the Town's regulations must be removed to this Court; and 2) the ICCTA, through the establishment of the STB, creates a set of remedies and procedures for the Town to vindicate its claims. These arguments mischaracterize the case law and the ICCTA for several reasons.

First, there is no question that the overarching policy of the ICCTA was to deregulate the railroad industry by providing a broad preemptive defense to state economic regulations. *See* 49 U.S.C. § 10101. But, basing an argument solely on the reasons why Congress designed and passed the ICCTA is vague and insufficient grounds for removal under this narrow doctrine when the express language of the statute dictates otherwise. Rather than focusing on why this Court has removal jurisdiction, the G&U focused on the strength of its defense on the merits under the general preemptive sweep of the entire ICCTA. It is well settled that complete preemption is rarely employed, and in the cases where the Supreme Court has developed the doctrine, the Court has held it applies under specific individual provisions, not under an entire statutory compilation as the G&U would have this Court accept. *See Beneficial*, 539 U.S. at 10 (holding that Sections 85 and 86 of the National Banking Act, 12 U.S.C. §§ 85-86, completely

preempted state law usury claims against national banks); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S. Ct. 1542 (1987) (holding that common law tort and contract actions seeking to recover plan benefits under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(b), were completely preempted); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560, 88 S. Ct. 1235 (1968) (holding that claims challenging collective bargaining agreement pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "aris[e] under the 'laws of the United States' within the meaning of the removal statute"). Furthermore, Congress has designed statutes that expressly provide for removal of state law claims. *See, e.g.*, 28 U.S.C. § 1442(a) (allowing removal of any civil or criminal action brought against a member of the armed forces while in the line of duty); 42 U.S.C. § 2210(n)(2) (permitting removal of "any public liability action . . . pending in any state court" that results from a nuclear incident). Thus, if Congress wanted to make any claim relating to transportation by rail carrier removable, it could have explicitly done so.

Second, when the G&U actually cites to a specific ICCTA provision, i.e., Section 10501(b), the gravamen of its argument is that because this facility would be considered "transportation by rail carrier" under that section and because agencies like the STB have discretionary authority to provide "federal remedies" in the form of declaratory judgments, removal jurisdiction in this Court is proper under complete preemption. *See* 49 U.S.C. § 721(b)(4) ("The Board may . . . when necessary to prevent irreparable harm, issue an appropriate order. . . ."); 5 U.S.C. § 554(e) ("The agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty."); *but see Californians for Alts. to Toxics v. N. Coast R.R. Auth.*, Nos. C-11-04102-

JCS, C-11-04103-JCS, 2012 WL 1610756, at *9 n.3 (N.D. Cal. May 8, 2012) ("While the ICCTA may provide a party with the right to seek a declaratory order, that is irrelevant to whether the ICCTA provides a cause of action for Plaintiffs' claims.")

The G&U's logic misses the mark for several reasons. In order for this Court to validate such an argument, it would have to misconstrue the First Circuit's holding from *Fayard v. Northeast Vehicle Services, LLC*. 533 F.3d 42 (1st Cir. 2008). In *Fayard*, direct abutters to a railroad brought a state court action alleging that the railroad interfered with the private use and enjoyment of their property under nuisance law because the continuous operations at the railroad's distribution facility produced noise pollution, light pollution and emitted noxious fumes. *Id.* at 44. The railroad removed the action to federal court. *Id.* In denying the abutters' motion to remand, the district court held that the relief sought by the abutters would have constituted an economic regulation upon the railroad and therefore their nuisance claims were completely preempted under the ICCTA. *Id.* On appeal, however, the First Circuit reversed the district court and remanded the action back to state court. *Id.* at 47. In holding that the ICCTA did not completely preempt the abutters' nuisance claims, the court reasoned that the focus of a complete preemption inquiry should be whether federal law provides a corresponding or supervening *cause of action*, not whether it merely provides a remedy. *Id.* ("[W]e could find no [STB] or court precedent entertaining ICCTA claims seeking redress for railroad conduct akin to nuisance."). Here, the Town seeks to enforce its local zoning and permitting laws, nothing more. The G&U has not presented a single provision under the ICCTA nor under any other federal statute that creates a cause of action to vindicate zoning and permitting violations.

Besides disregarding the precedent from this Circuit, the G&U would also have this Court deliberately circumvent the express and unambiguous language of Section 10501(b) that

provides the STB with an *exclusive* grant of jurisdiction over "transportation by rail carrier," which, according to the G&U, would include the construction of transloading facilities like the one at issue here. *See Friberg v. K.C. S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) ("The language of the statute could not be more precise . . . ."). Moreover, the G&U glosses over the fact that inherent within the STB's general grant of jurisdiction under Section 10501(b) is the ability to not only adjudicate these types of disputes but also to determine whether it has jurisdiction in the first place. *See Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638l, 642 (2d Cir. 2005) ("As the agency authorized by Congress to administer the [ICCTA], the [STB] is uniquely qualified to determine whether state law . . . should be preempted by the [ICCTA].") (internal quotations omitted); *Grafton & Upton R.R. Co. v. Town of Milford*, 337 F. Supp. 2d 233, 240 (D. Mass. 2004) ("STB has exclusive jurisdiction over construction projects."); *Rushing v. K.C. S. Ry. Co.*, 194 F. Supp. 2d 493, 499 (S.D. Miss. 2001) ("[T]he clear and manifest purpose of Congress when it enacted [Section 10501] was to place certain areas of railroad regulation within the exclusive jurisdiction of the STB and to preempt remedies otherwise provided under federal or state law.").

While this Court recognizes that the last sentence in Section 10501(b)(2) includes a "broad" and sweeping "statement of Congress's intent to preempt state regulatory authority over railroad operations" under the jurisdiction of the STB, *CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996), "[n]othing in the text of [Section 10501] vests exclusive jurisdiction in the federal district court." *Shupp*, 850 F. Supp. 2d at 501. Section 10501(b), on its face, is a jurisdictional provision and does not provide substantive grounds that establish a cause of action applicable to the state laws in the case. *See Californians for Alts. to Toxics*, 2012 WL 1610756 at *9 ("Defendants have pointed to no provision . . . in the STB's

implementing regulations . . . that would provide Plaintiffs with a cause of action for their [California Environmental Quality Act] claims."); *Trejo v. Union Pac. R.R. Co.*, No. 10-cv-00285-JLH, 2011 WL 309614 (E.D. Ark. Jan. 28, 2011) (granting a motion to remand after holding that Arkansas state tort actions were not completely preempted under the ICCTA and noting that the "lack of an express superseding federal claim militates against concluding that Congress intended the ICCTA to completely preempt state tort claims"); *Watkins v. RJ Corman R.R.*, No. 7:09-114-KKC, 2010 WL 1710203, at *4 (E.D. Ky. Apr. 27, 2010) ("In the case at bar, [the defendant railroad] has failed to demonstrate that the ICCTA provides a federal cause of action that supersedes state-law nuisance and negligence causes of action."); *Allied Indus. Dev. Corp. v. Ohio Cent. R.R., Inc.*, No. 09-CV-01904, 2010 WL 1524469, at *1 (N.D. Ohio Apr. 15, 2010) (finding that the defendant railroad's removal of a state law action for trespass was "not objectively reasonable" under the ICCTA because that statute did not provide a federal cause of action for that type of claim); *Shupp*, 850 F. Supp. 2d at 501; *New Eng. S. R.R. Co. v. Bos. & Me. Co.*, No. 07-403-JL, 2008 WL 4449420, at *3 (D.N.H. Sept. 30, 2008) ("There is nothing . . . in the specific provisions invoked . . . [under Section 10501(b)] to divest the [STB] of its exclusive jurisdiction, or to create concurrent jurisdiction in both the Board and this court. . . ."). In fact, this Court has been unable to formulate a single scenario where Section 10501(b) would provide an actionable cause of action giving rise to complete preemption.

Therein lies the "logical conundrum" that underscores the G&U's arguments under Section 10501(b). *Shupp*, 850 F. Supp. 2d at 500. Section 10501(b) is unlike the provisions that the Supreme Court has held completely preempt certain state law claims. *Cf.* 12 U.S.C. §§ 85-86 (establishing a cause of action for recovery of usurious interest rates and setting forth procedures for vindicating such an action); 29 U.S.C. § 1132(a)(1)(B) (providing an explicit cause of action

"to recover benefits due him under the terms of his [ERISA] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"). It is difficult to accept an argument that a statute provides jurisdiction in this Court under complete preemption while at the same time the plain language of that provision actually confers exclusive jurisdiction on the STB for these precise types of matters and does not create a coextensive federal cause of action analogous to the regulations at issue.[6] *See generally Carroll v. United States*, 354 U.S. 394, 77 S. Ct. 1332 (1957) ("[J]urisdictional statutes . . . have always been interpreted in the light . . . of the axiom that clear statutory mandate must exist to found jurisdiction."); *City of Lincoln v. STB*, 414 F.3d 858, 861 (8th Cir. 2005) ("Courts have recognized that Congress intended to give the Board extensive authority [over 'transportation by rail carrier']."). What the G&U really attempts to argue is that because the ICCTA is a federal scheme through which an administrative agency has exclusive power to preempt state law, that that–and that alone–is somehow sufficient grounds for removal under complete preemption. For this Court to find complete preemption under such interpretation of the statute and case law would further blur the boundaries of the doctrine and usurp jurisdiction established by Congress and retained by the Executive.[7]

---

[6]     The G&U's continued insistence that the exclusive grant of jurisdiction to the STB under Section 10501(b) provides jurisdiction in this Court is tantamount to a salesperson basing their entire business strategy on advertising the success of their competitor's products; soon it would come as no surprise to find that person out of business.

[7]     It is worth noting, *arguendo*, that the only way to actually reconcile the language of Section 10501(b) and an argument that Section 10501(b) provides a substantive cause of action completely preempting the state law issues in this case would require this Court to willfully interpret the narrow holding from *Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co.*, 215 F.3d 195 (2000) in an overly broad and incorrect manner.

In *Pejepscot*, a dispute arose between a scrap metal shipper and a railroad over the railroad's refusal to transport the shipper's cargo as required of common carriers under the ICCTA. *Id.* at 198; 49 U.S.C. § 11101(a) ("A rail carrier providing transportation or service subject to the jurisdiction of the [STB] under this part shall provide the transportation or service on reasonable request."). The shipper brought suit in federal district court to vindicate the alleged violation of the ICCTA under Section 11101(a). 215 F.3d at 201; 49 U.S.C. § 11704(c)(1) ("A person may . . . bring a civil action . . . enforc[ing] liability against a rail carrier . . . .").

The district court dismissed the action after holding that it lacked subject matter jurisdiction because Section 10501(b) granted exclusive jurisdiction to the STB over the claims at issue. 215 F.3d at 197. However, after

To reiterate, complete preemption is a doctrine that courts rarely and reluctantly apply. Nothing in this Memorandum and Order is designed to impede or preclude the G&U from presenting a preemption defense on the merits. The most appropriate forum for that defense, nevertheless, is before the STB. As is the case here, "any ambiguity as to the source of law relied upon . . . ought to be resolved *against* removal." *Rossello-Gonzalez*, 398 F.3d at 11.

Accordingly, and for the reasons set forth above, this Court is compelled to find that Section 10501(b) does not provide grounds for complete preemption of the local regulations at issue.

## B.  The Complaint Does Not Raise a Federal Question

The G&U also argues that the Town has explicitly raised a federal question in the Complaint by repeatedly referencing the G&U's anticipated defense of federal preemption. The G&U also posits that the Town's ZBLs would not apply until after this Court determines the validity of its preemption defense. While it is interesting that the G&U decided to lead with this

---

analyzing the "language and structure" of the ICCTA's legislative history, on appeal, the First Circuit resolved the "apparent" tension between the express language in Sections 11704(a) and 11704(c) and Section 10501(b) by holding that nothing in the express grant of jurisdiction to the STB under Section 10501(b) divested district courts of concurrent jurisdiction under Section 11704(c) to hear actions seeking to vindicate violations of the ICCTA. *Id.* at 205; *see also New Eng. S. R.R. Co. v. Bos. & Me. Co.*, No. 07-403-JL, 2008 WL 4449420, at *3 (D.N.H. Sept. 30, 2008). The First Circuit noted that "[t]he thrust of the statute is to *federalize these disputes*, not to deprive the federal courts of jurisdiction." 215 F.3d at 205-06 (emphasis added).

When reduced to its most basic form, the holding from *Pejepscot* stands for the notion that if a section of the ICCTA provides district courts with concurrent jurisdiction, then the STB's jurisdiction under that section *cannot* be "exclusive." Assuming that is true, however, then logically the contrapositive is equally true: if a section of the ICCTA provides the STB with "exclusive" jurisdiction, then the district courts' jurisdiction *cannot* be concurrent. Thus, when the G&U insists that under *Pejepscot* both this Court and the STB have concurrent jurisdiction over this type of dispute, it misconstrues the First Circuit's holding. The holding from *Pejepscot* is narrow and did not involve removal under complete preemption. Moreover, *Pejepscot* allows for concurrent jurisdiction over a wholly separate section of the ICCTA that is not specifically relied upon by the G&U as giving rise to removal under complete preemption. *Accord New Eng. S. R.R. Co.*, 2008 WL 4449420, at *3 ("The holding in *Pejepscot* . . . merely recognized federal court jurisdiction under § 11704, a provision of the ICCTA which [already] expressly provide[d] for it."); *Rushing v. K.C. S. Ry. Co.*, 194 F. Supp. 2d 493, 500 (S.D. Miss. 2001) ("Unlike the plaintiff in *Pejepscot* which alleged a claim under the ICCTA, specifically that the Defendant violated 49 U.S.C. § 11101, the Plaintiffs in the present case have not alleged any cause of action arising under the ICCTA.").

argument in its Memorandum in Opposition to Plaintiff's Motion to Dismiss, it nevertheless fails as a matter of law.

This is nothing more than a backdoor attempt to create another carve-out to the well-pleaded complaint rule even though the complete preemption doctrine is the bailiwick upon which this entire motion is disposed. As the Supreme Court stated in *Caterpillar*, "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even *if both parties concede that the federal defense is the only question truly at issue*." 482 U.S. at 393 (citing *Franchise Tax Bd.*, 463 U.S. at 12) (emphasis added). Here, there is no question that the underlying merits of this case will likely be subject to preemption, but only as a defense to the Town's regulations. Thus, it is irrelevant whether any, or both, of the parties have realized the significance of the preemption issue either at this time, or at the moment the Complaint was initially filed.

Accordingly, the Court declines federal question jurisdiction over this action under 28 U.S.C. § 1331.

### C.  The Court Does Not Have Federal Ingredient Jurisdiction

The G&U proposes another, even rarer exception to the well-pleaded complaint rule, known as "federal ingredient" jurisdiction. Under this theory, courts may remove a Complaint that pleads only state law claims if those claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *One & Ken Valley Hous. Grp. v. Me. State Hous. Auth.*, No. 12-1952, 2013 WL 1976819, at *5 (1st Cir. May 14, 2013) (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013)). Notwithstanding the fact that

courts have enigmatically declared that this doctrine is "vibrant" within the First Circuit, this Court finds the G&U's argument unpersuasive for several reasons. *See Metheny v. Becker*, 352 F.3d 458, 460 (1st Cir. 2003).

First, although the G&U recites relevant doctrinal principles, at no point does it identify a specific provision under the ICCTA that creates a "substantial question of federal law" necessary for federal ingredient jurisdiction. *Almond v. Capital Props., Inc.*, 212 F.3d 20, 25 (1st Cir. 2000) (citing *Franchise Tax Bd.*, 463 U.S. at 13). Moreover, even when the G&U generically references the ICCTA as whole, it repeats the vague and unsubstantiated assertion that concurrent jurisdiction exists between the STB and this Court. As discussed *supra* n.7, that argument, while never discussed in detail, is implicitly based on the holding from *Pejepscot* which is inapposite in both this case and this discussion of federal ingredient jurisdiction.

Second, the G&U's argument rests primarily on the Supreme Court's holding in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363 (2005). The jurisdictional action in *Grable* arose after the IRS seized a Michigan corporation's real property to satisfy unpaid tax debts. *Id.* at 310. Following that seizure, the IRS resold the property to a third party under a quitclaim deed pursuant to 26 U.S.C. § 6339. *Id.* Nevertheless, the corporation filed a state court action for quiet title seeking to invalidate the sale of its former property arguing that the IRS failed to provide it with adequate notice of the initial seizure under 28 U.S.C. § 6335(a). *Id.* at 311. The action was subsequently removed and both the district court and Sixth Circuit refused to remand the case. *Id.* Affirming the removal, the Supreme Court reasoned that because the corporation's state law claims were entirely premised on an argument of invalid title as a result of the IRS violating federal law, federal-question jurisdiction was necessarily implicated to decide whether those federal laws were broken. *Id.* at 314-15.

The underlying facts of this case are distinguishable from those in *Grable*. Although not explicitly mentioned by the Supreme Court, *Grable* represents the classic case of violating the well-pleaded complaint rule. There, the state court action to remove a "presumed" cloud on title could only exist if there was actually a *cloud on title* created by a federal law violation. Thus, it is clear that the corporation in *Grable*, by implication, violated the well-pleaded complaint rule because it attempted to "defeat removal by omitting to plead necessary federal questions." *Alshafri v. Am. Airlines, Inc.*, 321 F. Supp. 2d 150, 155 (D. Mass. 2004). Here, however, the Town only seeks to enforce a cease and desist order based on the G&U's presumed violations of its local zoning and permitting laws. Although the Complaint recognizes the G&U's preemption defense to those claims, it is merely a defense. *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. KG*, 510 F.3d 77, 99 n.22 (1st Cir. 2007) (noting that preemption is an affirmative defense that defendants must "plead and prove"). There is nothing in the violations set forth in the Complaint that could reasonably be considered premised upon or "necessarily depend[ing]" upon a determination that federal laws have been violated in order to institute an action like the one in *Grable*. *See Greeney v. Cent. for Human Dev., Inc.*, 725 F. Supp. 2d 259, 263 (D. Mass. 2010).

Finally, because removal of this matter was improper under the narrow exception of complete preemption, this Court declines to extend jurisdiction under the even more tenuously defined doctrine of federal ingredient jurisdiction. Like complete preemption, federal ingredient jurisdiction is applied sparingly and as the First Circuit has noted, "should be applied with caution." *Almond*, 212 F.3d at 23. Moreover, outcomes under this "controversial" doctrine have been described as "neither analytical nor entirely logical."[8] *Id.* (internal quotations omitted).

---

[8] *See also Cambridge Literary Props.*, 510 F.3d at 99 (holding that a state law action for accounting did not establish a substantial federal question that necessitated resolution under the Copyright Act); *Dixon v. Coburg*

Accordingly, because the Complaint does not implicate the resolution of a substantial question of federal law, the Court declines to retain jurisdiction over this matter under the federal ingredient exception to the well-pleaded complaint rule.

### D.  Delay Tactics and the STB

The G&U finally argues that the Town's Motion to Dismiss is merely a delay tactic in order to present its case before the STB. This Court takes no position on this argument and disregards the G&U's allegations as nothing more than bald assertions. While the procedural posture of this case was unorthodox, as discussed throughout this Memorandum and Order, this matter is precisely the type of action that should be brought before the STB for a determination of whether the ICCTA preempts the Town's claims. *See* 49 U.S.C. § 10501(b). In fact, many cases that retained jurisdiction in federal court, nevertheless, recognized the value of the STB's interpretation of specific ICCTA provisions by either referring the case directly to the STB or remanding to district court for further STB determination. *See Coastal Distrib., LLC v. Town of Babylon*, 216 Fed. App'x 97, 103 (2d Cir. 2007) (modifying a preliminary injunction to allow the parties to seek a declaratory judgment from STB determining whether the construction of a facility on railroad property fell under the STB jurisdiction); *Pejepscot*, 215 F.3d at 205-06 (remanding case to the district court with instructions to refer the case to the STB noting that the STB's input would "materially aid the district court" and would "promote uniformity"); *Town of*

---

*Dairy, Inc.*, 369 F.3d 811, 818-19 (4th Cir. 2004) (remanding case after holding that a wrongful termination suit under South Carolina law did not give rise to federal ingredient jurisdiction under the First Amendment); *Metheny*, 352 F.3d at 461-62 (remanding action alleging abuse of discretion against Boxborough's zoning board of appeals after it granted a variance to erect a wireless communication tower reasoning that federal ingredient jurisdiction did not allow for removal nor necessitated the resolution of any issues under the Telecommunications Act of 1996); *Livingstone v. Adler*, Nos. 03-11934-DPW, 03-11935-DPW, 2004 WL 438927, at *3-4 (D. Mass. Mar. 10, 2004) (remanding action after holding that Provincetown's application of local zoning laws to prohibit the construction of a wireless communications facility did not implicate federal ingredient jurisdiction to resolve questions under the Telecommunications Act of 1996); *Alshafri*, 321 F. Supp. 2d at 164 (remanding case and holding that federal ingredient jurisdiction did not apply to an airline passenger's state court action for unlawful discrimination for refusal of service because there was not a substantial federal question implicated by the Airline Deregulation Act).

*Milford*, 337 F. Supp. 2d at 240 ("[E]ven if state and local law are preempted by the ICCTA, the STB should, in the first instance, determine the precise scope of that preemption."); *Engelhard Corp. v. Springfield Term. Ry. Co.*, 193 F. Supp. 3d 385, 391 (D. Mass. 2002) (referring the case and holding that the STB's determination over the matter was the "heart of the task assigned . . . by Congress" and would "materially aid the court"). Finally, the STB is perfectly capable of deciding whether it has jurisdiction over such matters and has developed an appropriate framework and expertise in deciding preemption issues. *See Union Pac. R.R Co. v. Chicago Transit Auth.*, 647 F.3d 675, 679 (7th Cir. 2011) (describing the STB's preemption framework as either "(1) categorical, or *per se*, preemption, [or] (2) "as applied" preemption"); *Barrois*, 533 F.3d at 336 n.4 (noting that after the Fifth Circuit in *PCI* affirmed the district court's removal under complete preemption under Section 10501(b), the district court, nevertheless, dismissed the action "as falling within the exclusive jurisdiction of the STB.").

## V.   CONCLUSON

Accordingly, I hereby **GRANT** the Town's Motion to Dismiss for Lack of Removal Jurisdiction and remand the matter to Worcester Superior Court. Furthermore, all motions currently pending before this Court are hereby **DISMISSED** as moot.

SO ORDERED.

*/s/ Timothy S. Hillman* _____
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**